**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLND**
**(BALTIMORE DIVISION)**

**JACLYN PRASCH**
**c/o Zipin, Amster & Greenberg, LLC**
**8757 Georgia Avenue, Suite 400**
**Silver Spring, Maryland 20910**

*Individually and on Behalf of*
*All Others Similarly Situated,*

      Plaintiff,

  v.                                                                    **CASE NO.**

**BOTTOMS UP GENTLEMEN'S CLUB, LLC**
**415 East Baltimore Street**
**Baltimore, Maryland 21202**

**SERVE: Fred Beasley**
**816 West Lombard Street**
**Apartment - Rear**
**Baltimore, Maryland 21201**

**And**

**CHEZ JOEY, LLC**
**415 East Baltimore, Street**
**Baltimore, Maryland 21202**

**SERVE: Mario Teresi, Sr.**
**3926 East Pratt Street**
**Baltimore, Maryland 21224**

      Defendants.

**COLLECTIVE AND CLASS ACTION COMPLAINT**

1. This action is styled as a hybrid collective and class action brought by Plaintiff Jaclyn Prasch ("Plaintiff"), individually, and on behalf of the members of Plaintiff's proposed classes as identified and defined below.

2. Plaintiff and the putative class members are and/or or were individuals that worked or performed as exotic dancers for, at, or in Defendants Bottoms Up Gentlemen's Club, LLC d/b/a the Bottoms Up Club ("Bottoms Up") and/or Defendants' Chez Joey, LLC d/b/a Chez Joey ("Chez Joey"), both operating throughout the relevant period at 415 East Baltimore Street, Baltimore, Maryland 21202 ("Defendants' Chez Joey and/or Bottoms Up Clubs" or "Defendants") during the period March 2020, through the present ("the relevant period").

3. During the relevant period, Defendants has had uniform policies and practices misclassifying Plaintiff and the other members of their exotic dancer workforce at Defendants' Chez Joey and/or Bottoms Up Clubs as a non-employee contractors and, arising from this misclassification, failing to pay Plaintiff and the proposed class members minimum wage compensation and subjecting Plaintiff and the proposed class members to unlawful kickbacks and/or wage deductions, excessive credit card processing fees, and taking and assigning Plaintiff and the proposed class members' earned tips and gratuities in violation of the Fair Labor Standards Act of 1938, as amended, ("FLSA"), the Maryland Wage Hour Law ("MWHL"), and the Maryland Wage Payment Collection Law ("MWPCL").

4. During the relevant period, Defendants, on a common and class-wide basis, unlawfully denied Plaintiff and the proposed class members full and timely payment of minimum wage compensation and retention of all earned wages, tips, and gratuities in violation of the FLSA, MWHL, and MWPCL.

5. Plaintiff brings this action individually and on behalf of other similarly situated individuals that worked or performed exotic dancers for, at, or in Defendants' Chez Joey and/or bottoms Up Clubs during the relevant period, as a collective action pursuant to the FLSA for the purpose of obtaining relief under the FLSA for unpaid minimum wages, recovery of unlawfully assigned or withheld earned wages, tips, and gratuities, liquidated damages, costs, attorneys' fees, and/or any such other relief the Court may deem appropriate.

6. Plaintiff brings this action individually and on behalf of other similarly situated individuals that worked or performed exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs during the relevant period, as a class action pursuant to the MWHL and MWPCL for the purpose of obtaining relief under Maryland law for unpaid minimum wages, recovery of unlawfully assigned or withheld earned wages, tips, and gratuities, liquidated damages, costs, attorneys' fees, and/or any such other relief the Court may deem appropriate.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. §1331, this action being brought under the FLSA, 29 U.S.C. §201, *et seq*.

8. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper pursuant to 28 U.S.C. §1391(b) and (c) in the U.S. District Court for the District of Maryland, Baltimore Division, because a substantial part of the events or omissions giving rise to the claims occurred within Baltimore City, Maryland, and Defendants have had substantial and systematic contacts within Baltimore City, Maryland, within the relevant period.

## PARTIES

10. Bottoms Up is a limited liability company, formed under the laws of the State of Maryland, with its principal place of business in Baltimore City, Maryland.

11. Chez Joey is a limited liability company, formed under the laws of the State of Maryland, with its principal place of business in Baltimore City, Maryland.

12. During the relevant period, Defendants owned and operated Bottoms Up and Chez Joey as strip clubs, featuring nude and semi-nude female exotic dancers performing provocative and/or erotic dances for the entertainment of Defendants' customers.

13. During the relevant period, Defendants qualified as joint employer and/or as a single-employer enterprise of and for Plaintiff and all individuals that worked or performed as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs.

14. During the period relevant to his action, common ownership, managers, and/or agents commonly acting on behalf of both Defendants oversaw, directed, and otherwise controlled the terms and conditions of employment of and for Plaintiff and all individuals that worked or performed as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs.

15. During the period relevant to this action, common ownership, managers, and/or agents commonly acting on behalf of both Defendants held full authority and control to set and/or modify work duties, work responsibilities, work hours, and rate and method of compensation of and for Plaintiff and all individuals that worked or performed as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs.

16. During the period relevant to this action, common ownership, managers, and/or agents commonly acting on behalf of both Defendants had full power and authority to hire, fire, and/or discipline and/or alter the conditions of employment of and for Plaintiff and all individuals that worked or performed as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs.

17. During the period relevant to this action, exotic dancer work duties performed by Plaintiff and all individuals that worked or performed as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs was ongoing and at-will and not *ad hoc* and/or limited to a discrete time or special assignment.

18. During the period relevant to this action, common ownership, managers, and/or agents of Defendants owned and operated Defendants' Chez Joey and Bottoms Up Clubs in cooperatively for the singular purpose of operating strip clubs providing exotic dancer and related adult entertainment for the benefit and enjoyment of Defendants' mutual customers.

19. During the period relevant to this action, Plaintiff and all individuals that worked or performed as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs performed exotic dancer employment duties at Defendants' common ownership, management, and/or supervisors' direction and instruction for the primary benefit of Defendants' Chez Joey and Bottoms Up Clubs during the same days and/or weeks.

20. During the period relevant to this action, Plaintiff and all individuals that worked or performed as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs did so for Defendants' common benefit at Defendants' single business location, 415 E Baltimore Street, Baltimore, Maryland 21202, owned or leased, operated, and controlled by Defendants' common ownership.

21. During the period relevant to this action, Defendants shared common time keeping and compensation practices related to Plaintiff and all individuals that worked or performed as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs, through a common and mutually shared accountant/bookkeeper and similar administrative and bookkeeping tools to make general business and/or operational decisions for the primary benefit of Defendants' common ownership and management.

22. Plaintiff is an adult resident of Baltimore, Maryland.

23. By acting as the named Plaintiff and affixing her name to the caption in this pleading, Plaintiff provides the Court with her written consent to prosecute her individual and representative claims against Defendants for unpaid wages and damages under the FLSA and Maryland law.

## CLASS DEFINITIONS

24. Plaintiff brings this action on behalf of herself and all other similarly situated employees in the FLSA Minimum Wage Class, as authorized under the FLSA, 29 U.S.C. § 216(b). The FLSA Minimum Wage Class is defined as follows:

> All persons who worked or performed as exotic dancers for, in, or at Defendants' Chez Joey and/or Bottoms Up Clubs, during the period March 2020 through the date of judgment in this case (hereafter, "the FLSA Minimum Wage Class").

25. Plaintiff brings this action on behalf of herself and all other similarly situated employees in sub-classes under the MWHL and MWPCL pursuant to FED.R.CIV.P. 23. The MWHL and MWPCL sub-classes are defined as follows:

> All persons who worked or performed as exotic dancers for, in, or at Defendants' Chez Joey and/or Bottoms Up Clubs, during the period March 2020 through the date of judgment in this case (hereafter, "the Maryland Classes").

26.     The FLSA Minimum Wage Class, the Maryland Classes will be referred to collectively hereinafter as the "the Classes."

## INDIVIDUAL ALLEGATIONS

27.     Plaintiff was employed by Defendants to work or perform as an exotic dancer for, at, or in Defendants' Bottoms Up Club, primarily between about March 2021, until about October 2021.

28.     Plaintiff was employed by Defendants to work or perform as an exotic dancer for, at, or in Defendants' Chez Joey Club, primarily from about October 2021, through about January 2023.

29.     At all times during Plaintiff's period of employment, Defendants commonly classified Plaintiff as a non-employee contractor while working or performing as an exotic dancer for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs.

30.     During the period of Plaintiff's employment, Plaintiff typically and customarily worked the day shift, from about 12:00 PM until about 8:00 PM, and occasionally worked evening shifts from about 8:00 PM, until about 2:00 AM.

31.     During the period of Plaintiff's employment, Plaintiff customarily worked at about 3-5 shifts per week, for an average of 21-35 hours per week.

32.     During the period of Plaintiff's employment, Defendants failed to pay Plaintiff any wages at all for hours worked.

33.     During the period of Plaintiff's employment, Plaintiff received tips or money directly from Defendants' customers for dancing on stage, interacting with customers, and by selling "drinks," which included Plaintiff's sale of beverages and Plaintiff's performance of non-VIP exotic dances for the entertainment of Defendants' customers.

34. During the period of Plaintiff's employment, when Plaintiff worked evening shifts, Defendants required Plaintiff to pay Defendants a per-shift kickback or "house fee" as a condition of her employment for the shift. The kickback or "house fee" ranged from about $25.00 to $50.00, per shift.

35. During the period of Plaintiff's employment, at the conclusion of Plaintiff's shift, Defendants regularly and customarily required Plaintiff to pay a "tip out" or pay and/or assign a portion of the tips she received from Defendants' customers to Defendants' other employees, in the amount of about $20.00-$40.00, per shift.

36. During the period of Plaintiff's employment, Defendants unlawfully deducted and retained 50% of all tips or gratuities and/or similar payments Defendants' customers paid directly to Plaintiff through credit cards. This 50% deduction far exceeded the actual credit card processing fee charged to Defendants by the credit card companies, which typically fell within the range of about 2%-5%.

## **GENERAL ALLEGATIONS**

37. Plaintiff and the members of the Classes worked or performed as exotic dancers for, in, or at Defendants' Chez Joey and/or Bottoms Up Clubs during the period March 2020, through the date of judgment in this case.

38. During the relevant period, Plaintiff and the members of the Classes danced to music which Defendants streamed over the internet. The internet is an instrumentality of commerce. As such, Plaintiff and the members of the Classes used instrumentalities of commerce while working or performing as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs.

39. During the relevant period, Defendants' cashiers that took payments for all VIPs, drinks, and/or dances performed by Plaintiff and the members of the Classes. The cashiers process numerous credit card transactions each day Defendants' Chez Joey and/or Bottoms Up Clubs were open.

40. During the relevant period, Defendants served beer and liquor at Defendants' Chez Joeys and/or Bottoms Up Clubs that was brewed/distilled outside of Maryland, along with soda which was also manufactured outside of Maryland.

41. In each year relevant, Defendants had gross sales or revenue exceeding $500,000.00.

42. During the relevant period, Defendants commonly labeled and/or classified Plaintiff and the members of the Classes as non-employee contractors and not as employees.

43. During the relevant period, Defendants retained the absolute right and authority to control and direct the exotic dancer work duties performed by Plaintiff and the members of the Classes inside Defendants Chez Joey and Bottoms Up Clubs.

44. During the relevant period, Defendants required Plaintiff and the members of the Classes to adhere to and follow prescribed rules, procedures, polices, and codes of conduct regarding breaks and how, when, and where to dance working or performing as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs.

45. During the relevant period, Defendants subjected Plaintiff members of the Classes to discipline and/or fines for failing to follow Defendants' rules, procedures, policies, and codes of conduct for exotic dancers working or performing for, at, or in Defendants' Chez Chey and/or Bottoms Up Clubs.

46. During the relevant period, Defendants set the rate which Plaintiff and the members of the Classes were restricted to and/or permitted to charge customers for "drinks," non-VIP private and/or semi-private dances, and for VIP dances at or in Defendants' Chez Joey and/or Bottoms Up Clubs.

47. During the relevant period, Defendants, by and through direct supervision by managers, supervisors, and other employees and/or contractors, had actual knowledge of all hours Plaintiff and the members of the Classes worked or performed as exotic dancers for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs.

48. During the relevant period, Defendants did not pay any wages or any form of compensation to Plaintiff or the members of the Classes for exotic dancer work duties performed for, in, or at Defendants' Chez Joey and/or Bottoms Up Clubs.

49. During the relevant period, Plaintiff and the members of the Classes received compensation exclusively in the form of tips or gratuities paid directly by Defendants' customers.

50. During the relevant period, Defendants and/or Defendants' managers charged and/or deducted unlawful kickbacks from Plaintiff and the members of the Classes including a per-shift house fee kickback or deduction for evening shift work in the range of about $25.00 - $50.00 per shift, depending on arrival time.

51. During the relevant period, at the conclusion of their shift, Defendants regularly and customarily required Plaintiff and the members of the Classes to pay a "tip out" or pay and/or assign a portion of the tips received from Defendants' customers to Defendants' other employees, in an about of about $20.00-$40.00, per shift.

52. During the relevant period, Defendants unlawfully deducted and retained 50% of all tips Defendants' customers paid Plaintiff and all members of the Classes through credit cards. This 50% deduction far exceeded the actual credit card processing fee charged to Defendants by the credit card companies, which typically fell within the range of about 2%-5%.

53. Prior to the period relevant to this action, Defendants and/or Defendants' common management and ownership, were subject to one or more lawsuits by current or former exotic dancers wherein the current or former exotic dancers alleged FLSA and Maryland minimum wage and/or wage payment violations nearly identical to those alleged in this action on behalf of Plaintiff and the members of the Classes.

54. Arising from Defendants and/or Defendants' common ownership and/or managements' participation in substantially similar prior litigation, during the relevant period, Defendants had actual knowledge their misclassification of Plaintiff and the members of the Classes, failure to pay wages, charging kickbacks and/or direction of tip assignments was in direct violation of the FLSA, the MWHL, and the MWPCL.

55. Defendants' conduct and violations of the FLSA, MWHL, and MWPCL, as set forth in this pleading, was willful and in bad faith, and has caused significant damages to Plaintiff the members of the Classes.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

56. Plaintiff brings her FLSA claims in this action on behalf of herself and members of the FLSA Minimum Wage Class, each of whom, during the period March 2020, through the present, work(ed) and/or perform(ed) as exotic dancers for, at, or in Defendants Chez Joey and/or Bottoms Up Clubs, and were (i) misclassified by Defendants as non-employee contractors; (ii) were not paid direct wages from Defendants for hours worked at or above the

Federal Minimum Wage rate; and (iii) were subject to unlawful kickback deductions and/or excessive credit card fee transactions and/or unlawful tip assignments in violation of the FLSA.

57. The FLSA claims of Plaintiff stated herein against Defendants are the same or substantially similar to the FLSA claims of the members of the FLSA Minimum Wage Class.

58. Plaintiff and the FLSA Minimum Wage Class seek relief on a collective basis and challenge Defendants' policies and practices which lead to the class wide FLSA wage payment violations herein identified.

### RULE 23 CLASS ALLEGATIONS - MARYLAND

59. Plaintiff brings her MWHL and MWPCL Maryland state law claims as a Class Action in sub-classes under FED. R. CIV. P. 23 on behalf of the members of the Maryland Classes for violations of the MWHL and MWPCL occurring on or after March 2020, through the date of judgment in this case.

60. The members of the MWHL and MWPCL sub-classes of the Maryland Classes are readily ascertainable from records in Defendants' possession, custody, or control.

61. The MWHL and MWPCL sub-classes of the Maryland Classes are each so numerous that joinder of all members is impracticable, and more importantly the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole custody control, upon information and belief, there are at least fifty (50) members in the MWHL and MWPCL sub-classes Maryland Classes.

62. Plaintiff's MWHL and MWPCL claims of the MWHL and MWPCL claims of the members of the MWHL and MWPCL sub-classes of the Maryland Classes arise from Defendants' (i) class-wide misclassification of Plaintiff and the members of the Maryland

Classes as non-employee contractors; (ii) failure to pay direct wages to Plaintiff and the members of the Maryland Classes at an hourly rate at least equal to the Maryland Minimum Wage; (iii) charging and/or deductions of kickbacks and/or per-shift "house fees" and/or excessive credit card transaction fees from Plaintiff and the members of the Maryland Classes; and (iv) deductions and/or assignments of tips and/or gratuities from Plaintiff and the members of the Maryland Classes.

63. Plaintiff's MWHL and MWPCL claims are typical of those claims which could be alleged by any member of the MWHL or MWPCL sub-class of the Maryland Classes and the relief sought is typical of the relief which would be sought by each member of the MWHL and MWPCL sub-classes of the Maryland Classes in separate actions.

64. Plaintiff and the members of the MWHL and MWPCL sub-classes of the Maryland Classes sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures perpetrated by Defendants during the relevant period in violation of the MWHL and the MWPCL.

65. Plaintiff and Plaintiff's counsel can fairly and adequately protect the interests of the Maryland Classes and has no interests antagonistic to the members of the members of the MWHL or MWPCL sub-classes of the Maryland Classes.

66. There are questions of fact and law common to the MWHL and MWPCL claims belonging to Plaintiff and the members of the MWPCL and MWPCL sub-classes of the Maryland Classes that predominate over any questions affecting only individual members, such as:

    a) Whether Plaintiff and the members of the Maryland Classes were Defendants' employees under the MWHL and the MWPCL;

b) Whether Defendants violated the MWHL and the MWPCL by failing to fully and timely pay Plaintiff and the Members of the Maryland Classes direct wages the applicable Maryland Minimum Wage rate for all hours worked;

c) Whether Defendants violated the MWHL and the MWPCL by charging a kickback "house fee" against Plaintiff and the members of the Maryland Classes each shift evening worked;

d) Whether Defendants violated the MWHL and the MWPCL by charging Plaintiff and the members of the Maryland Classes an excessive credit card processing fee from payments made by Defendants' customers to Plaintiff and the members of the Maryland Classes;

e) Whether Defendants violated the MWHL and the MWPCL by deducting tips and/or gratuities received by Plaintiff and the members of the Maryland Classes and assigning payment of the same to Defendants' non-dancer assignees; and

f) Whether Defendants' violations of the MWHL and the MWPCL was willful, intentional, the product of good faith, or arose from a bona fide dispute by or between Defendant and Plaintiff and the members of the Maryland Classes.

67. A class action divided into MWHL and MWPCL sub-classes is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs bringing claims under the MWHL and/or MWPCL lack the financial resources to vigorously prosecute separate lawsuits in Federal Court, particularly those with relatively small claims.

68. The questions set forth above related to the MWHL and MWPCL claims by Plaintiff and the members of the MWHL and MWPCL sub-classes of the Maryland Classes

predominate over any questions affecting only individual persons, and a class action divided into MWHL and MWPCL sub-classes promotes consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the claims.

## COUNT I
### Violation of the Fair Labor Standards Act of 1938 as Amended

69. Plaintiff, on behalf of herself and the FLSA Minimum Wage Class, reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

70. During the relevant period, Defendants qualified Plaintiff and the FLSA Minimum Wage Class's employer, joint employer, and/or single enterprise employer under the FLSA.

71. As a result of the above alleged practices, during the relevant period, Defendants violated the FLSA by failing to compensate Plaintiff and the FLSA Minimum Wage Class for all hours worked at the Federal Minimum Wage rate.

72. As a result of the above alleged practices, during the relevant period, Defendants violated the FLSA by charging and deducting unlawful wage kickbacks and/or excessive credit card processing fees and/or tip assignments against Plaintiff and the FLSA Minimum Wage Class.

73. Plaintiff and the FLSA Minimum Wage Class are owed and entitled to payment of FLSA minimum wage compensation equal to (i) reimbursement of all deducted, assigned, and/or withheld kickback charges, excessive credit card processing fees, and tip and/or gratuity deductions and/or assignments and (ii) payment of direct wages at the "free and clear" Federal Minimum Wage rate for all hours worked during the relevant period.

74. Prior to and during the relevant period, Defendants had actual and/or constructive knowledge of the FLSA Minimum Wage and wage payment requirements and Defendants'

failure to abide by the same in compensating Plaintiff and the FLSA Minimum Wage Class was willful, knowing and intentional or, at minimum, reckless.

75. Defendants' failure to properly compensate Plaintiff and the FLSA Minimum Wage Class during the relevant period as required by the FLSA was not the product of good faith on the part of Defendants.

## COUNT II
### Violation of Maryland Law – Unpaid Minimum Wages (MWHL)

76. Plaintiff, on behalf of herself and the members of the MWHL sub-class of the Maryland Classes, re-alleges and incorporates all previous paragraphs as if they were set forth herein.

77. During the relevant period, Plaintiff and the members of the MWHL sub-class of the Maryland Classes performed exotic dancer employment duties for Defendants' primary benefit, for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs, within Baltimore City, Maryland.

78. During the relevant period, Defendants qualified Plaintiff and the members of the MWHL sub-class of the Maryland Classes' employer, joint employer, and/or single enterprise employer under the MWHL.

79. As a result of the above alleged practices, during the relevant period, Defendants violated the MWHL by failing to compensate Plaintiff and the members of the MWHL sub-class of the Maryland Classes for all hours worked at the Maryland Minimum Wage rate.

80. As a result of the above alleged practices, during the relevant period, Defendants violated the MWHL by charging and deducting unlawful wage kickbacks and/or excessive credit card processing fees and/or tip assignments against Plaintiff and the members of the MWHL sub-class of the Maryland Classes.

81. Plaintiff and the members of the MWHL sub-class are owed and entitled payment to unpaid wages equal to (i) reimbursement of all deducted, assigned, and/or withheld kickback charges and tip and/or excessive credit card processing fees, gratuity deductions and/or assignments and (ii) payment of direct wages at the "free and clear" Maryland Minimum Wage rate for all hours worked during the relevant period.

82. Prior to and during the relevant period, Defendants had actual and/or constructive knowledge of the Maryland Minimum Wage and the MWHL wage payment requirements and Defendants' failure to abide by the same in compensating Plaintiff and the members of the MWHL sub-class of the Maryland Classes was willful, knowing and intentional or, at minimum, reckless.

83. Defendants' failure to properly compensate Plaintiff and the members of the MWHL sub-class of the Maryland Classes during the relevant period as required by the MWHL was not the product of good faith.

## COUNT III
### Violation of Maryland Law
### Unlawful Deductions/Failure to Pay Full and Timely Wages
### Required by Maryland Law (MWPCL)

84. Plaintiff, on behalf of herself and the members of the MWPCL sub-class of the Maryland Classes, re-alleges and incorporates all previous paragraphs as if they were set forth herein.

85. During the relevant period, Plaintiff and the members of the MWPCL sub-class of the Maryland Classes performed exotic dancer employment duties for the primary benefit of Defendants for, at, or in Defendants' Chez Joey and/or Bottoms Up Clubs, within Baltimore City, Maryland.

86. During the relevant period, Defendants qualified Plaintiff and the members of the MWPCL sub-class of the Maryland Classes' employer, joint employer, and/or single enterprise employer under the MWPCL.

87. As a result of the above alleged practices, during the relevant period, Defendants violated the MWPCL by failing to fully and timely compensate Plaintiff and the members of the MWPCL sub-class of the Maryland Classes all wages earned and due and owing for all hours worked at the Maryland Minimum Wage as required by Maryland law.

88. As a result of the above alleged practices, during the relevant period, Defendants violated the MWPCL by charging and deducting unlawful wage kickbacks and/or excessive credit card processing fees and/or tip assignments against Plaintiff and the members of the MWPCL sub-class of the Maryland Classes resulting in unlawful deductions and/or a failure by Defendants to fully and timely pay all wages earned and due and owing for all hours worked.

89. Plaintiff and the members of the MWPCL sub-class are owed and entitled to unpaid Maryland unpaid wages equal to (i) reimbursement of all deducted, assigned, and/or withheld kickback charges and/or excessive credit processing fees and/or tip and/or gratuity deductions and/or assignments and (ii) payment of direct wages at the "free and clear" Maryland Minimum Wage rate for all hours worked during the relevant period.

90. Prior to and during the relevant period, Defendants had actual and/or constructive knowledge of the Maryland and MWPCL wage payment requirements and Defendants' failure to abide by the same in compensating Plaintiff and the members of the MWPCL sub-class of the Maryland Classes was willful, knowing, and intentional or, at minimum, reckless.

91. Defendants' failure to properly full and timely compensate Plaintiff and the members of the MWPCL sub-class of the Maryland Classes earned wages during the relevant

period as required by the Maryland law and the MWPCL was not the product of good faith on the part of Defendants or a *bona fide* dispute by or between Defendants and Plaintiff or the members of the MWPCL sub-class of the Maryland Classes.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and on the behalf of all members of the Classes requests the following relief:

a) An order designating this action as a collective action on behalf of the Plaintiff and the FLSA Minimum Wage Class and issuance of notices pursuant to 29 U.S.C. § 216(b) to all members of the FLSA Minimum Wage Class;

b) An order certifying this action as a FED. R. CIV. P. 23 class action on behalf of the proposed MWHL and MWPCL sub-classes of the Maryland Classes;

c) An order designating the Plaintiff as representative of the FLSA Minimum Wage Class and the MWHL and MWPCL sub-classes of the Maryland Classes and appointment of Plaintiff's counsel as counsel for the FLSA Minimum Wage Class and the MWHL and MWPCL sub-classes of the Maryland Classes;

d) Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

e) An order finding that Defendants violated the FLSA, MWHL, and the MWPCL;

f) An order finding Defendants' violations of the FLSA, MWHL, and MWPCL were not the product of good faith;

g) An order finding Defendants' violations of the FLSA, MWHL, and MWPCL were willful;

h) Judgment against Defendants and in favor of Plaintiff and the members of the FLSA Minimum Wage Class and the Maryland Classes equal (i) reimbursement of all deducted, assigned, and/or withheld kickback charges, excessive credit card processing fees, and tip and/or gratuity deductions and/or assignments and (ii) payment of direct wages at the "free and clear" applicable minimum wage rate for all hours worked during the relevant period.

i) An award against Defendants and in favor of Plaintiff and the members of the FLSA Minimum Wage Class and the Maryland Classes in the full amount of all available liquidated damages and penalties as provided under the FLSA, MWHL, and MWPCL;

j) An award in the amount of all costs and attorneys' fees incurred in prosecuting these claims; and

k) Such further relief as the Court deems just and equitable.

Dated this 8th day of March 2023         Respectfully submitted,

ZIPIN, AMSTER & GREENBERG, LLC

  /s/ Gregg C. Greenberg
Gregg C. Greenberg
Maryland Federal Bar No. 17291
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone: 301-587-9373
Fax:  240-839-9142
Email:  ggreenberg@zagfirm.com

*Counsel for Plaintiff and the Classes*