IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JACLYN PRASCH,<br><br>  Plaintiff,<br><br>v.<br><br>BOTTOMS UP GENTLEMEN'S CLUB,<br>LLC, *et al.*,<br><br>  Defendants. | Civil Action No. 23-cv-00634-LKG<br><br>Dated:  June 13, 2024 |

## **MEMORANDUM OPINION**

**I. INTRODUCTION**

  This putative class action involves claims for unpaid wages brought by Plaintiff, Jaclyn Prasch, on behalf of herself and similarly situated individuals, against Defendants, Bottoms Up Gentlemen's Club, LLC ("Bottoms Up") and Chez Joey, LLC ("Chez Joey"), arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann. Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann. Lab. & Empl. § 3-501 *et seq*. *See generally* ECF No. 1.

  Plaintiff filed the complaint in this matter on March 8, 2023. *Id*. The Defendants have not answered, or otherwise responded to, the complaint. ECF No. 7 at 2; ECF No. 12 at ¶ 2. And so, the Clerk of the Court entered an Order of Default in Plaintiff's favor on August 21, 2023. ECF No. 8.

  On November 28, 2023, Plaintiff filed a motion for default judgment, pursuant to Fed. R. Civ. P. 55. ECF No. 12. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2023). For the reasons that follow, the Court: (1) **GRANTS** Plaintiff's motion for default judgment and (2) **ENTERS JUDGMENT** in favor of Plaintiff against the Defendants, jointly and severally, for: (a) unpaid wages in the amount of **$86,932.23**; (b) statutory liquidated

damages in the amount of **$86,932.23**, pursuant to the FLSA and MWHL; (c) attorneys' fees in the amount of **$10,472.50**; and (d) costs in the amount of **$731.60**.  ECF No. 12 at 21-22.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this putative class action, Plaintiff asserts claims to recover unpaid wages against the Defendants, arising under the FLSA, MWHL and MWPCL.  *See generally* ECF No. 1.  In the complaint, Plaintiff alleges that the Defendants unlawfully denied her full and timely payment of minimum wage compensation, and retained all earned wages, tips and gratuities, during her employment with the Defendants as an exotic dancer, in violation of the FLSA, MWHL and MWPCL.  *Id*. at ¶ 4.  As relief, Plaintiff seeks to recover, among other things, unpaid wages, liquidated damages and reasonable attorneys' fees and costs.  *Id*. at Request for Relief.

The Parties

Plaintiff Jaclyn Prasch is a resident of Baltimore, Maryland.  *Id*. at ¶ 22.  Plaintiff worked as an exotic dancer at Defendant Bottoms Up from March 2021 to October 2021.  *Id*. ¶ at 27.  Plaintiff also worked as an exotic dancer at Defendant Chez Joey between October 2021 and January 2023.  *Id*. at ¶ 28.

Defendant Bottoms Up Gentlemen's Club, LLC is a limited liability company formed under the laws of Maryland, with its principal place of business located in Baltimore City, Maryland.  *Id*. at ¶ 10.

Defendant Chez Joey, LLC is a limited liability company formed under the laws of Maryland, with its principal place of business located in Baltimore City, Maryland.  *Id*. at ¶ 11.

During the period relevant to this action, the Defendants operated at the same business location, 415 E. Baltimore Street, Baltimore, Maryland 21202.  *Id*. at ¶ 20.

---

[1] The facts recited in this memorandum opinion are derived from the complaint and Plaintiff's motion for default judgment.  ECF Nos. 1, 12.

Plaintiff's Work Hours And Compensation

As background, Plaintiff formerly worked as an exotic dancer at Defendant Bottoms Up and Defendant Chez Joey (collectively, the "Clubs"), which are located in Baltimore, Maryland. *Id*. at ¶¶ 2, 20. The Clubs operate as strip clubs and feature nude and semi-nude female exotic dancers who perform provocative dances for the entertainment of the Defendants' customers. *Id*. at ¶ 12.

During the period that Plaintiff worked at the Clubs, she typically worked the day shift, from approximately 12:00 p.m. to 8:00 p.m. *Id*. at ¶ 30. But, on certain occasions, Plaintiff would work the evening shift at the Clubs, from approximately 8:00 p.m. to 2:00 a.m. *Id*.

Customarily, Plaintiff worked between three and five shift per week, for a total of 21 to 35 hours worked per week. *Id*. at ¶ 31. At all times during Plaintiff's work at the Clubs, Defendants classified her as a non-employee contractor. *Id*. at ¶ 29. Given this, the Defendants did not pay Plaintiff any wages. *Id*. at ¶ 32. And so, Plaintiff only received compensation in the form of tips provided directly by the Defendants' customers, for dancing on stage, interacting with customers and selling drinks. *Id*. ¶ 33.

In support of her motion for default judgment, Plaintiff has provided information to the Court to show the number of hours that she worked while working at the Clubs. ECF Nos. 12-1 at 5-8; *see generally* ECF No. 12-2. To determine the number of shifts and hours worked during each shift at the Clubs, Plaintiff uses certain parking records from LAZ Parking to show the times she entered and exited a nearby parking garage on her way to and from work. ECF No. 12-1 at ¶ 27. This evidence illustrates that Plaintiff worked 538 shifts—52 of which were night shifts—for a total of 3,764.5 hours, between March 15, 2021 and January 30, 2023.[2] *Id*. at 8.

Plaintiff's Allegations

Plaintiff maintains in this action that the Defendants qualify as her employer under the FLSA and Maryland law, and that they failed to fully and timely compensate her for work

---

[2] Plaintiff has parking records for all shifts worked at the Clubs, except those during the first six weeks of her tenure working for Defendants. ECF No. 12-1 at ¶ 27. Plaintiff maintains that the amount of time that she worked during this six-week period "was substantially the same as the amount of time" she worked during the rest of her time working at the Clubs. *Id*. at ¶ 29

performed as an exotic dancer at the Clubs. ECF No. 1 at ¶¶ 13, 32-36. Specifically, Plaintiff alleges that the Defendants had "uniform policies and practices" that misclassified her and other members of the exotic dancer workforce at the Clubs as non-employee contractors, rather than employees, and thus improperly denied Plaintiff payment of a minimum wage. *Id*. at ¶¶ 3-4.

In this regard, Plaintiff alleges that the Defendants: (1) retained the right to control and direct her exotic dance duties; (2) required that she follow prescribed rules, procedures and codes of conduct; and (3) subjected her to discipline and/or fines for failing to follow such rules, procedures, policies and codes of conduct. *Id*. at ¶¶ 43-45. In addition, Plaintiff alleges that the Defendants set the rate at which she was allowed to charge customers for drinks and dances and that the Defendants "had actual knowledge of all hours" she worked or performed as an exotic dancer at the Clubs. *Id*. at ¶¶ 46-47.

Plaintiff also alleges that the Defendants subjected her to "unlawful kickbacks and/or wage deductions, excessive credit card processing fees, and taking and assigning [her] and the proposed class members' earned tips and gratuities," during her employment at the Clubs. *Id*. at ¶ 3. In this regard, Plaintiff contends that the Defendants required that she pay a "house fee" kickback, a "tip out" for other employees and a "processing fee" for credit card tips, which were taken out of the tips she earned directly from customers after each shift. *Id*. at ¶¶ 27, 33-36. Specifically, Plaintiff contends that the Defendants required that she pay between $25.00 and $50.00 per shift to the Defendants as a kickback or "house fee," if she worked a night shift at the Clubs, and that the Defendants also required that she pay between $20.00 and $40.00 per shift as a "tip out" to go to the Defendants' other employees. *Id*. at ¶¶ 34-35. Lastly, Plaintiff alleges that the Defendants retained half of the credit card payments made for her services, by charging Plaintiff a "processing fee." *Id*. at ¶ 36.

Plaintiff brings this action to recover unpaid wages and damages on behalf of herself and other similarly situated individuals who worked or performed as exotic dancers for the Defendants during the period of March 2020 through the date of judgment in this matter. *Id*. at ¶ 37, Prayer for Relief. Based upon the Maryland minimum wage rate at the relevant times, Plaintiff calculates that Defendants owe her $46,082.23 in hourly minimum wage for her labor at the Clubs during the period of March 15, 2021, to January 30, 2023. ECF No. 12-1 at 8. In addition, Plaintiff alleges that she is owed: (1) $11,300.00 in "tip outs;" (2) $1,300.00 in "house

fees;" and (3) $28,250.00 in credit card "processing fees," for a total amount of $40,850.00 in retained tips. *Id*. And so, Plaintiff seeks a judgment of unpaid wages against the Defendants, jointly and severally, in the amount of $86,932.23 and statutory liquidated damages pursuant to the MWPCL, in the amount of $173,864.45. ECF No. 12 at 22. In addition, Plaintiff seeks a judgment of an award of attorneys' fees in the amount of $10,472.50 and costs in the amount of $731.60 against the Defendants, jointly and severally. *Id*. at 21.

### B. Procedural Background

Plaintiff commenced this putative class action on March 8, 2023. ECF No. 1.

The summons and complaint were properly served on the Defendants on May 16, 2023. ECF Nos. 5, 6. Because the Defendants neither answered, nor otherwise responded to, the complaint, Plaintiff filed a motion for Clerk's entry of default on July 19, 2023. ECF No. 7.

On August 21, 2023, the Clerk of the Court entered an Order of Default against the Defendants. ECF No. 9, 10. On November 28, 2023, Plaintiff filed the pending motion for default judgment, pursuant to Fed. R. Civ. P. 55(b)(2). ECF No. 12.

## III. LEGAL STANDARDS

### A. Default Judgment

Federal Rule of Civil Procedure 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is appropriate when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In deciding whether to grant a default judgment, the Court takes as true the well-pled factual allegations of the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). In this regard, the Court applies the

5

pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in this context. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). And so, where a petition avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment. *Russell v. Railey*, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of facts that 'show' why those conclusions are warranted.").

Upon a finding that the plaintiff has established liability, the Court must independently determine the appropriate amount of damages. *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010). The Court must do so "because 'an allegation relating to the amount of damages is not deemed admitted based on a defendant's failure to deny in a required responsive pleading.'" *Clancy v. Skyline Grill, LLC*, 2012 WL 5409733, at *3 (D. Md. Nov. 5, 2012) (quoting *Hartford Fin. Servs. Grp. v. Carl J. Meil, Jr., Inc.*, 2011 WL 1743177, at *7 (D. Md. May 5, 2011)).

### B. The FLSA

Congress enacted the Fair Labor Standards Act to protect workers from poor wages and long hours that can result from substantial inequalities in bargaining power between employers and employees. *See* S. Rep. No. 884, at 3-4 (1937); H.R. Rep. No. 1452, at 9 (1937); *see also Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 407 (D. Md. 2014); *Saman v. LBDP, Inc.*, 2013 WL 2949047, at *2 (D. Md. June 13, 2013). The FLSA requires an employer to pay each employee "who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce" not less than a minimum wage. 29 U.S.C. § 206(a). The FLSA also provides that "no employer shall employ" a covered employee in excess of 40 hours in a week unless the employee is paid "at a rate not less than one and one-half times the regular rate at which [s]he is employed" for each additional hour worked. *Id*. § 207(a)(1). In general, a two-year statute of limitations applies to the recovery of back wages and liquidated damages under the FLSA. *Id*. § 261(d). But this limitations period can be extended to three years in cases involving willful violations. *Id*.

Upon a finding of an employer's liability, the FLSA allows a covered employee to recover "[her] unpaid minimum wages, or [her] unpaid overtime compensation, as the case may

6

be." *Id*. § 216(b).   When seeking damages in cases where wage and pay records are not available, a plaintiff must offer evidence that allows for a "just and reasonable inference" of the compensation she is owed.  *Sankoh v. Gold Street Cap. Fund*, 2018 WL 1709115, at *4 (D. Md. Apr. 6, 2018) (quoting *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985)).  If an employee testifies as to her recollection of hours worked and pay received, and the Court deems the testimony credible, such evidence is sufficient to establish a *prima facie* case of wages owed.  *Lopez v. Lawns 'R' Us*, 2008 WL 2227353, at *3 (D. Md. May 23, 2008).

In addition to payment for unpaid wages, an employer who has violated the FLSA is liable to the employee "in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  But liquidated damages may be withheld notwithstanding an employer's violation of the FLSA, if the employer presents evidence that it acted in good faith and on reasonable grounds that its actions complied with the FLSA.  *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).

Relevant to this dispute, an "employer" within the context of the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d).  The statute also generally defines an employee as "any individual employed by an employer." *Id*. § 203(e)(1).  This Court has held that the FLSA's definition of employer is to be "interpreted broadly[,] to give effect to the purpose of the FLSA; namely, providing employees a statutory remedy for employers' labor violations." *Ergashov v. Glob. Dynamic Transp., LLC*, 2015 WL 13229505, at *5 (D. Md. Nov. 13, 2015), *aff'd* 680 F. App'x 161 (4th Cir. 2017).  The Fourth Circuit has also instructed that, when determining whether the defendant in a FLSA case is an employer, the Court should review the "economic realities" of the worker's relationship with her putative employer.  *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006).  And so, the Court considers "whether the worker 'is economically dependent on the business to which [s]he renders service or is, as a matter of economic reality, in business for [her]self.'"  *Id*. (quoting *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994) (cleaned up).

In this regard, courts regularly assess the following six economic reality factors to determine whether an individual is an employee or independent contractor under the FLSA: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunity for profit or loss dependent on her own managerial skill;

7

(3) the worker's investment in equipment or material, or her employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. *Id*. at 304-05 (citing *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000). While no one element of this test is dispositive, "[t]he overarching concern is whether [the defendant] possessed the power to control the worker[] in question." *Sama v. Turning Point, Inc.*, 2024 WL 112030, at *4 (D. Md. Jan. 10, 2024) (quoting *Prusin v. Canton's Pearls, LLC*, 2017 WL 5126156, at *11 (D. Md. Nov. 6, 2017)).

Lastly, the Court applies a two-step framework for analyzing a worker's FLSA claims against multiple entities. *Schultz*, 466 F.3d at 305-07. First, the Court determines whether the multiple defendants should be treated as the plaintiff's joint employers. *Id*. at 305-06. In this regard, the Fourth Circuit has identified six factors to aid the Court in considering whether a joint employment relationship exists under the FLSA:

> (1) whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
>
> (2) whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
>
> (3) the degree of permanency and duration of the relationship between the putative joint employers;
>
> (4) whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;
>
> (5) whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and
>
> (6) whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 141-42 (4th Cir. 2017).

If the Court concludes that a joint employment relationship exists, it next considers whether the plaintiff was an employee of the joint employers or merely an independent

contractor.[3]  And so, if the Court concludes that multiple defendants are a plaintiff's joint employers, the defendants may be held jointly and severally liable for any violations of the FLSA.  *Id*. at 134 n.5; *Schultz*, 466 F.3d at 305, 310.

### C. Maryland Wage Laws

The Maryland Wage and Hour Law's requirements mirror those of the FLSA and similarly mandate that an employer pay non-exempt employees at least minimum wage for all hours worked.  Md. Code Ann. Lab. & Empl. § 3-413(b); *Turner v. Human Genome Science, Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003).  As the "state parallel'" to the FLSA, the pleading requirements for an MWHL claim are the same as those for a FLSA suit.  *Clancy*, 2012 WL 5409733, at *3.  And so, the Court analyzes a plaintiff's employee status under both the MWHL and FLSA by applying the six-factor "economic realities" test set forth in *Schultz*.  *See, e.g., Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 569 (D. Md. 2014); *Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 458-59 (D. Md. 2000).

The Maryland Wage Payment and Collection Law requires that employers "pay each employee at least once in every [two] weeks or twice in each month." Md. Code Ann., Lab. & Empl. § 3-502(a)(1)(ii).  Under the MWPCL, employers are required to pay an employee's wages for all work performed, before the termination of employment, either on or before the day on which the employee would have been paid had the employee not been terminated.  *Id*. § 3-505; *Hoffman v. First Student, Inc.*, 2009 WL 1783536, at *10 (D. Md. June 23, 2009).  As with the FLSA and the MWHL, an employee pursuing an MWPCL claim must demonstrate that an employee-employer relationship existed with her purported employer.  *Sankoh*, 2018 WL 1709115, at *2.  Maryland applies the Fourth Circuit's joint employer framework, as codified in *Salinas*, to MWPCL analyses.  *McCoy v. Transdev Servs., Inc.*, 2022 WL 951996, at *15 (D. Md. Mar. 30, 2022).  In addition, the MWPCL allows for the recovery of triple the amount of unpaid

---

[3] While the FLSA does not expressly reference "joint employment," the Court may find that separate entities share control over an individual worker, so that they are joint employers under the FLSA.  *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 133 (4th Cir. 2017).  In this regard, the Fourth Circuit has recognized that an individual who works "for two or more entities that are not completely disassociated with respect to [her] work may not amount to an employee protected by the FLSA when [her] relationship to each entity is considered separately, but may . . . when [her] relationships to all of the relevant entities are considered in the aggregate."  *Hall v. DIRECTV, LLC*, 846 F.3d 757, 768 (4th Cir. 2017) (internal quotations omitted).

9

wages as damages.  *Clancy*, 2012 WL 5409733, at *7.  "[A] plaintiff may be 'entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both.'" *McCoy*, 2022 WL 951996, at *15 (quoting *Quiroz v. Wilhelp Com. Builders, Inc.*, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011).

### D. Attorney's Fees

Lastly, the Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorney' fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case."  *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022).  The lodestar amount is defined as a "'reasonable hourly rate multiplied by hours reasonably expended.'"  *Lopez v. XTEL Const. Grp.*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see De La Cruz v. Chopra*, 2018 WL 2298717, at *2 (D. Md. May 21, 2018) (noting that the lodestar method "multiplies the number of hours reasonably expended by a reasonable hourly rate").  "Courts in this circuit generally use a percentage of recovery method and supplement it with the lodestar method as a cross-check."  *Donaldson v. Primary Residential Mortg., Inc.*, 2021 WL 2187013, at *8 (D. Md. May 28, 2021); *see also Starr v. Credible Behavioral Health, Inc.*, 2021 WL 2141542, at *5 (quoting *Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("In the Fourth Circuit, 'the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorneys' fees' in class actions.").

### IV. LEGAL ANALYSIS

Plaintiff seeks entry of a default judgment against the Defendants for failure to plead or otherwise defend in this matter, and an award of unpaid wages and statutory liquidated damages, pursuant to Fed. R. Civ. P. 55(b).  ECF No. 12.  In her motion, Plaintiff requests that the Court: (1) enter default judgment against Defendants; (2) award her $86,932.23 in unpaid wages; (3) award her $173,864.45 in statutory liquidated damages under the MWPCL or, in the alternative, $86,932.23 in statutory liquidated damages under the MWHL or FLSA; and (4) award her counsel $10,472.50 in attorneys' fees and $731.60 in costs.  *Id*. at 22.  For the reasons that follow, the Court (1) **GRANTS** Plaintiff's motion for default judgment and (2) **ENTERS JUDGMENT** in favor of Plaintiff against the Defendants, jointly and severally, for: (a) unpaid

10

wages in the amount of **$86,932.23**; (b) statutory liquidated damages in the amount of **$86,932.23**, pursuant to the FLSA and MWHL; (c) attorneys' fees in the amount of **$10,472.50**; and (d) costs in the amount of **$731.60**.

### A. Plaintiff Has Shown That Defendants Were Her Joint Employer

Because Plaintiff seeks to recover unpaid wages and liquidated damages from both Defendants in this wage-and-hour case, the Court considers as an initial matter whether the Defendants were Plaintiff's joint employer. *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 139-40 (4th Cir. 2017) (citing *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305-07 (4th Cir. 2006)). In this regard, the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The statute also generally defines an "employee" as "any individual employed by an employer." *Id*. § 203(e)(1). The Fourth Circuit has identified six factors to aid the Court in considering whether a joint employment relationship exists under the FLSA:

> (1) whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
>
> (2) whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
>
> (3) the degree of permanency and duration of the relationship between the putative joint employers;
>
> (4) whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;
>
> (5) whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and
>
> (6) whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Salinas*, 848 F.3d at 141-42. Plaintiff has shown that these *Salinas* factors demonstrate that the Defendants were her joint employer for several reasons.

First, Plaintiff sufficiently alleges facts in the complaint that, taken as true, show that the Defendants jointly exercised direction, control and supervision over her when she worked at the Clubs. In this regard, Plaintiff alleges that the Clubs have "common ownership, managers, and/or agents commonly acting on behalf of both Defendants." ECF No. 1 at ¶ 14; *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (noting that when deciding whether to grant default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Plaintiff also alleges that the Clubs' common managers and agents jointly "oversaw, directed, and otherwise controlled the terms" of her work at the Clubs. ECF No. 1 at ¶ 14. In addition, Plaintiff alleges that the Defendants "held full authority and control to set and/or modify" her work duties and responsibilities, work hours, rates and method of compensation. *Id*. at ¶ 15. And so, taken as true, Plaintiff's factual allegations show that the Defendants jointly directed, controlled and supervised her work at the Clubs.

Plaintiff has also shown that the Defendants jointly determined, shared or allocated the power to hire or fire her, and to modify the terms and conditions of her employment at the Clubs. Plaintiff alleges in the complaint that Defendants "had full power and authority to hire, fire, and/or discipline [her,] and/or [to] alter the conditions" of her employment. ECF No. 1 at ¶ 16. In this regard, Plaintiff also alleges that Defendants "set and enforced restrictions regarding when [she] could perform on stage." *Id*. at ¶ 19; *see also* ECF No. 12 at ¶ 12. And so, again, Plaintiff's allegations, taken as true, show that the Defendants were "not completely disassociated" with respect to her employment at the Clubs. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 768 (4th Cir. 2017).

The factual allegations in the complaint also make clear that Plaintiff's work as an exotic dancer was performed on a premises that was owned or controlled by one or more of the Defendants. For example, Plaintiff alleges that Defendants operated the Clubs at the same business location, 415 E. Baltimore Street, Baltimore, Maryland, 21202. ECF No. 1 at ¶ 20. Plaintiff also alleges that the Defendants "owned and operated [the Clubs] cooperatively for the singular purpose of operating strip clubs . . . for the benefit" of their customers. *Id*. at ¶ 18. And

12

so, these factual allegations similarly demonstrate that the Defendants jointly controlled and managed Plaintiff's work at the Clubs.

Lastly, the sixth *Salinas* factor—whether the Defendants jointly determined, shared or allocated responsibility over functions ordinarily carried out by employers—also supports a finding that the Defendants were Plaintiff's joint employers. Notably, Plaintiff alleges in the complaint that the Defendants shared common timekeeping and compensation practices, through a shared accountant or bookkeeper. *Id*. at ¶ 21. Again, taking this allegation as true, Plaintiff has shown that the Defendants shared authority over, and mutually determined, the conditions of her work at the Clubs.

For all of these reasons, the Court is satisfied that Defendants should be treated as Plaintiff's joint employers under the FLSA and parallel state law.

The Court is also satisfied that Plaintiff was the Defendants' employee within the context of the FLSA. This Court has long held that the FLSA's definition of an employer—"any person acting directly or indirectly in the interest of an employer in relation to an employee"—should be "interpreted broadly[,] to give effect to the purpose of the FLSA; namely, providing employees a statutory remedy for employers' labor violations." *Ergashov v. Glob. Dynamic Transp., LLC*, 2015 WL 13229505, at *5 (D. Md. Nov. 13, 2015), *aff'd* 680 F. App'x 161 (4th Cir. 2017); *see also* 29 U.S.C. § 203(d). And so, the Court assesses the following six "economic reality" factors to determine whether Plaintiff was an employee or independent contractor under the FLSA: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunity for profit or loss dependent on her own managerial skill; (3) the worker's investment in equipment or material, or her employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. *Schultz*, 466 F.3d at 304-05 (citing *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000)).

These factors weigh in favor of finding that Plaintiff was Defendants' employee for several reasons. First, as discussed above, the factual allegations in the complaint, taken as true, make clear that the Defendants exercised control over Plaintiff's work, duties and compensation, when she worked at the Clubs. ECF No. 1 at ¶¶ 15-16, 44-45. In fact, Plaintiff's allegations

make clear that her opportunity to earn a profit was not dependent upon her own managerial skills, because she alleges that the Defendants: (1) controlled the hours of operation for the Clubs; (2) determined which dancers performed; and (3) established the pricing and rate of her compensation.  ECF No. 12 at ¶¶ 10-12, 15.

The allegations set forth in the complaint also establish that Plaintiff neither invested in her own equipment, nor employed other workers, while working at the Clubs.  *See generally* ECF No. 1.  Rather, Plaintiff alleges that she used the facilities provided by the Defendants and that she was wholly reliant upon the tips of the Defendants' customers to earn an income.  *Id*. at ¶¶ 12, 33.  Given this, Plaintiff has shown that the "economic realities" of her working relationship with the Defendants was that of an employee-employer.

### B. Plaintiff Is Entitled To Recover Unpaid Wages And Liquidated Damages

#### 1. Plaintiff Is Entitled To Unpaid Wages And Tips

Because the Court concludes that Plaintiff was Defendants' joint employee during her tenure working at the Clubs, the Court next considers whether Plaintiff has shown that she is entitled to recover unpaid wages and liquidated damages under the FLSA and Maryland law.  For the reasons that follow, Plaintiff has also shown that she is entitled to the unpaid wages that she seeks in this matter.

Plaintiff seeks to recover unpaid wages, in the amount of $46,082.23, for hours that she worked at the Clubs without receiving a minimum wage.  ECF No. 12-1 at 8.  Under the FLSA, employers are required to pay their covered employees a minimum wage for each hour worked.  29 U.S.C. § 206(a)(1).  The MWHL similarly requires that an employer pay non-exempt employees at least minimum wage for all hours worked.  Md. Code Ann. Lab. & Empl. § 3-413(b); *Turner v. Human Genome Science, Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003).  Also relevant here, the FLSA prohibits an employer from "keep[ing] tips received by its employees for any purpose, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  29 U.S.C. § 203(m)(2)(B).  And so, upon a finding of an employer's FLSA liability, a covered employee is entitled to "[her] unpaid minimum wages, or [her] unpaid overtime compensation, as the case may be."  *Id*. § 216(b).

14

In this case, Plaintiff alleges that the Defendants failed to pay her a minimum wage for work performed as an exotic dancer during her employment at the Clubs. ECF No. 1 at ¶ 4. In this regard, Plaintiff alleges in the complaint that Defendants did not pay her any wages for her work as an exotic dancer. *Id*. at ¶ 32. Rather, Plaintiff alleges that she only received compensation for her work in the form of tips, or money provided directly to her by the Defendants' customers. *Id*. at ¶ 33. Given this, Plaintiff maintains that she is entitled to recover $46,082.23 for all hours that she worked at the Clubs under the FLSA and Maryland law. ECF No. 12-1 at 8.

To support this claim, Plaintiff has provided the Court with certain parking records from LAZ Parking, to show the dates and times that she entered and exited a parking garage located near the Clubs when commuting to and from work. *Id*. at ¶ 27. These parking records illustrate that Plaintiff worked 538 shifts at the Clubs, for a total of 3,764.5 hours, between March 15, 2021, and January 30, 2023. *Id*. at 8. And so, based upon the applicable Maryland minimum wage rate at the time, Plaintiff maintains that the Defendants owe her $46,082.23 for work performed at the Clubs during this time period. *Id*.

After carefully considering this evidence, and taking into account the factual allegations in the complaint, the Court is satisfied that Plaintiff has shown that Defendants owe her $46,082.23 in unpaid wages. And so, the Defendants are jointly and severally liable to Plaintiff for these unpaid wages under the FLSA and Maryland law. *Salinas*, 848 F.3d at 134 n.5; *Schultz*, 466 F.3d at 305, 310; *Boyd v. SFS Commc'ns, LLC*, 2021 WL 1430723, at *4 (D. Md. Apr. 15, 2021).

Plaintiff has also shown that the Defendants improperly retained her tips, and charged her certain fees, in the amount of $40,850.00, during her employment at the Clubs. Plaintiff alleges that the Defendants deducted portions of her tips, through a "house fee" kickback, a "tip out" for other employees and a "processing fee" for credit card tips, thereby reducing her compensation. ECF No. 1 at ¶¶ 33-36. In this regard, Plaintiff alleges that the Defendants required that she pay them between $25.00 and $50.00 per shift, as a kickback or "house fee," if she worked a night shift at the Clubs. *Id*. at ¶ 34. Plaintiff also alleges that the Defendants required that she pay between $20.00 and $40.00 per shift as a "tip out" to the Defendants' other employees. *Id*. at ¶ 35.

15

In addition, Plaintiff alleges that the Defendants retained half of the credit card payments made for her services, by charging her a "processing fee." *Id.* at ¶ 36. And so, Plaintiff seeks to recover: (1) $11,300.00 in "tip outs;" (2) $1,300.00 in "house fees;" and (3) $28,250.00 in credit card "processing fees." ECF No. 12-1 at 8. Because Plaintiff's allegations, taken as true, demonstrate that she is entitled to recover these improperly retained tips and fees under the FLSA, the Court is satisfied that Plaintiff may recover these funds from Defendants under the FLSA.

### 2. Plaintiff Is Entitled To Recover Liquidated Damages Under the FLSA

The Court is also satisfied that Plaintiff is entitled to recover liquidated damages in the amount of her unpaid wages and improperly retained tips and fees, pursuant to the FLSA. Under the FLSA, an employer who has violated the statute is liable to the employee "in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Such liquidated damages may be withheld, notwithstanding an employer's violation of the FLSA, if the employer presents evidence that it acted in good faith and on reasonable grounds that its actions complied with the FLSA. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). But the Defendants have not presented any evidence in this case to show that they acted in good faith and on reasonable grounds in failing to properly compensate Plaintiff for her labor. Given this, Plaintiff has shown that she is entitled to recover liquidated damages, in the amount of $86,932.23.[4]

### C. Plaintiff Is Entitled To A Default Judgment

Having determined that Plaintiff is entitled to recover unpaid wages and liquidated damages from the Defendants, the Court next considers whether entry of a default judgment against the Defendants in this matter is appropriate. Rule 55(b) of the Federal Rules of Civil Procedure provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

---

[4] Plaintiff also seeks to recover treble damages in this action under the MWPCL. The MWPCL permits the Court to award an employee treble damages, if the Court finds that an employer withheld a wage in violation of the MWPCL and not as a result of a *bona fide* dispute. Md. Code Ann. Lab. & Empl. § 3-507.1(b). Because the Court awards Plaintiff liquidated damages under the FLSA, she may not recover damages under the MWPCL. *McCoy v. Transdev Servs., Inc.*, 2022 WL 951996, at *15 (D. Md. Mar. 30, 2022) (quoting *Quiroz v. Wilhelp Com. Builders, Inc.*, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011)) ("[A] plaintiff may be 'entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both.'").

otherwise," the Court may enter default judgment at a party's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). And so, the Court may enter default judgment against Defendants, if Plaintiff seeks a sum certain or a sum that can be made certain by computation. Fed. R. Civ. P. 55(b)(1).

The litigation history of this case makes clear that the Defendants have failed to plead or otherwise defend in this civil action. The summons and complaint were properly served on Defendants more than one year ago, on May 16, 2023. ECF Nos. 5, 6. But, to date, the Defendants have neither answered, nor otherwise responded to, the complaint. Given this, Plaintiff filed a motion for Clerk's entry of default on July 19, 2023, which the Clerk granted on August 21, 2023. ECF Nos. 7, 9, 10. Thereafter, Plaintiff filed the pending motion for default judgment, which the Defendants have also failed to respond to. ECF No. 12. And so, entry of a default judgment against Defendants is warranted and appropriate in this case. Fed. R. Civ. P. 55(b).

### D. Plaintiff Is Entitled To Recover Her Reasonable Attorneys' Fees

As a final matter, Plaintiff has also demonstrated that the attorneys' fees and costs that she seeks to recover in this matter are reasonable. Under the FLSA, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs. *Lopez v. Lawns 'R' Us*, 2008 WL 2227353, at *5 (D. Md. May 23, 2008). When calculating a reasonable award of attorneys' fees under the FLSA, the Court may choose between the lodestar method and the percentage-of-recovery method as "it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). The lodestar amount is defined as a "'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp.*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see De La Cruz v. Chopra*, 2018 WL 2298717, at *2 (D. Md. May 21, 2018) (noting that the lodestar method "multiplies the number of hours reasonably expended by a reasonable hourly rate").

In this case, Plaintiff's attorneys represent to the Court that they have incurred attorneys' fees in the amount of $10,472.50 during the litigation of this case. ECF No. 12 at 21. To support the request to recover these fees, Plaintiff's counsel, Gregg C. Greenberg, Esq., who is a partner with the law firm Zipin, Amster & Greenberg, LLC, has provided an Affidavit to the

17

Court which explains the basis for the requested fees. *See* ECF No. 12-3. Mr. Greenberg explains in his Affidavit that he has more than 15 years of legal experience, including experience litigating FLSA matters. *Id*. at ¶¶ 4, 8. Mr. Greenberg also explains that he bills at a rate of $425.00 per hour and that he was assisted in this case by Yaakov Goldberger, Esq., who has been licensed to practice law in Maryland for approximately three years and bills at a rate of $225.00 per hour. *Id*. at ¶¶ 12-15.

Plaintiff's counsel has provided the Court with invoices for the legal services provided in this matter, which show that Mr. Greenberg spent approximately 15.8 hours on this case and that Mr. Goldberger spent approximately 16.7 hours on the case. ECF No. 12-4. Lastly, Mr. Greenberg states in his Affidavit that the professional time billed "was reasonable and necessary for the advancement of Plaintiff's interests in this matter." ECF No. 12-3 at ¶ 15. And so, Plaintiff seeks to recover attorneys' fees in the amount of $10,472.50. *Id*. at ¶¶ 19, 25.

Based upon the Court's review of Mr. Greenberg's affidavit and the related invoices for legal services provided by his law firm in this matter, the Court is satisfied that the requested attorneys' fees are reasonable. Counsel for Plaintiff have litigated this matter for approximately 15 months. During that time, Plaintiff's attorneys have prepared three substantive pleadings and filings in this case. ECF Nos. 1, 4, 12. Given this, the 32.5 combined billable hours expended by Plaintiff's attorneys are reasonable. The hourly rates billed by Mr. Greenberg and Mr. Goldberger are also in alignment with the guideline hourly rates that have been found to be reasonable in this District, given their respective levels of experience. *See* L.R. App. B(3) (rules and guidelines for determining an attorney's hourly rate based on the individual's years of legal experience). And so, the Court will award Plaintiff attorneys' fees in the amount of $10,472.50.

The Court will also permit Plaintiff to recover her litigation costs, in the amount of $731.60, to cover the cost of her filing fee of $402 and certain servicing costs of $329.60. ECF No. 12-4 at 2. Under the FLSA, "the costs that may be charged to losing defendants 'include those reasonable out-of-pocket expenses incurred by the attorney[,] which are normally charged to a fee-paying client, in the course of providing legal services.'" *Lopez*, 2008 WL 2227353, at *7 (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)). Plaintiff's attorneys have shown that they incurred the aforementioned costs in connection with the litigation of this matter

and that these costs are also reasonable. ECF No. 12-3 at ¶¶ 23-24. And so, the Court will also award $731.60 in costs to Plaintiff.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** Plaintiff's motion for default judgment;

(2) **ENTERS** default judgment against Defendants Bottoms Up Gentlemen's Club, LLC and Chez Joey, LLC, jointly and severally;

(3) **AWARDS** Plaintiff unpaid wages in the amount of **$86,932.23** and statutory liquidated damages in the amount of **$86,932.23**, pursuant to the FLSA and MWHL; and

(4) **AWARDS** Plaintiff's counsel **$10,472.40** in attorneys' fees and **$731.60** in costs.

A separate Order shall issue.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge